CASE NO. 22-55517

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――

LUCINE TRIM

*Plaintiff-Appellant,*

v.

REWARD ZONE USA LLC

*Defendant-Appellee.*

―――――――――

Appeal from the United States District Court
Central District of California, Case No. 2:20-cv-01027-SVW-KS
Hon. Stephen V. Wilson

―――――――――

## APPELLEE'S ANSWERING BRIEF

―――――――――

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Jay T. Ramsey
*jramsey@sheppardmullin.com*
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
Telephone:  310.228.3700

KLEIN MOYNIHAN TURCO LLP
*Neil A. Asnen
*nasnen@kleinmoynihan.com*
450 Seventh Avenue – 40th Floor
New York, NY 10123
Telephone: (212) 246-0900

*Attorney for Defendant-Appellee*
REWARD ZONE USA LLC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF ISSUES .......................................................................... 1

SUMMARY OF ARGUMENT .................................................................... 2

ARGUMENT ................................................................................................ 7

    I.      Standard Of Review ........................................................................ 7

    II.     The District Court Properly Held That Plaintiff Failed To Plead
            Use Of An ATDS ............................................................................ 8

          A.     The District Court's Ruling Is Consistent With The
                  TCPA's Text, Supreme Court Precedent, And Authority
                  From This Court ............................................................ 8

          B.     Plaintiff's Arguments Are Meritless ........................................ 10

               1.     Random or Sequential Number Generators Must
                      Generate Telephone Numbers ........................................ 11

               2.     The Word "Produce" is not Susceptible of the
                      Alternative Definitions Offered by Plaintiff ................... 14

                3.     Footnote 7 to the Facebook Decision Does Not
                      Represent a Loophole in an Otherwise Unanimous
                      Holding ......................................................................... 17

               4.     Neither the Subject Equipment Nor Predictive
                      Dialers Are ATDS Absent the Capacity to
                      Generate Telephone Numbers Using Random or
                      Sequential Number Generators ...................................... 19

    III.    The District Court Properly Held That Text Messages Cannot
            Support an Artificial/Prerecorded Voice Claim .................................. 20

CONCLUSION ............................................................................................ 28

CERTIFICATE OF COMPLIANCE .......................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Federal Cases**</u>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)................................................................8

*Atkinson v. Meta Platforms, Inc.*
    2021 WL 5447022 (9th Cir. Nov. 22, 2021) .......................................7

*Atkinson v. Pro Custom Solar LLC*
    2022 WL 4071998 (W.D. Tex. Sept. 1, 2022) ..................................18

*Austria v. Alorica, Inc.*
    2021 WL 5968404 (C.D. Cal. Dec. 16, 2021)....................................5

*Barnett v. First Nat'l Bank of Omaha*
    2022 WL 627028 (W.D. Ky. March 3, 2022) ...................................18

*Barry v. Ally Financial, Inc.*
    2021 WL 2936636 (E.D. Mich. July 13, 2021)..................................18

*Beal v. Outfield Brew House, LLC*
    28 F.4th 391 (8th Cir. 2022) .................................................14, 15, 16

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)................................................................7

*Borden v. eFinancial, LLC*
    53 F.4th 1230 (9th Cir. 2022) ...........................................passim

*Brickman v. United States*
    2022 U.S. App. LEXIS 35286 (9th Cir. Dec. 21, 2022)....................13

*Brickman v. United States*
    2022 WL 17826875 (9th Cir. Dec. 21, 2022)....................5, 10, 13, 14

*DeMesa v. Treasure Island, LLC*
    No. 2:18-cv-02007-JAD-NJK, 2022 WL 1813858 (D. Nev. June 1, 2022) ......22

*Facebook, Inc. v. Duguid*
    141 S.Ct. 1163 (2021)..........................................................passim

*Gadelhak v. AT&T Servs, Inc.*
  950 F.3d 458 (7th Cir. 2020) ...............................................................5

*In re Gilead Scis. Sec. Litig.*
  536 F.3d 1049 (9th Cir. 2008) .............................................................8

*Hudson v. Ralph Lauren Corp.*
  385 F. Supp. 3d. 639 (N.D. Ill. 2019)................................................23

*Lemmon v. Snap, Inc.*
  995 F.3d 1085 (9th Cir. 2021) .............................................................7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) .............................................................8

*Marks v. Crunch San Diego, LLC*
  904 F.3d 1041 (9th Cir. 2018) .............................................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.*
  521 F.3d 1097 (9th Cir. 2008) .............................................................7

*Mina v. Red Robin Int'l, Inc.*
  2022 WL 2105897 (D. Colo. June 10, 2022) ....................................18

*Mina v. Red Robin Int'l, Inc.*
  No. 20-cv-00612-RM-KLM, 2022 WL 17547830 (D. Colo. Aug. 19,
  2022) ..................................................................................................22

*Pac. Ins. Co. v. United States*
  188 F.2d 571 (9th Cir. 1951) .............................................................27

*Reese v. Marketron Broadcast Solutions, Inc.*
  2018 WL 2117241 (E.D La. May 8, 2018) ........................................23

*Risher v. Adecco Inc.*
  No. 19-cv-05602-RS, 2022 WL 17082667 (N.D. Cal. Nov. 18, 2022) ............22

*Satterfield v. Simon Schuster*
  569 F.3d 946 (9th Cir. 2009) .......................................................21, 23

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*
  No. 3:19-cv-592 (JAM), 2022 WL 2802347 (D. Conn. July 18, 2022).............22

*Taniguchi v. Kan Pac. Saipan, Ltd.*
566 U.S. 560 (2012).....................................................................................22, 25

*Tehrani v. Joie de Vivre Hospitality, LLC*
2021 WL 3880643 (N.D. Cal. Aug. 31, 2021) ...................................................18

*Timms v. USAA Federal Savings Bank*
2021 WL 2354931 (D. S.C. June 9, 2021) ........................................................18

*Turner v. Prod*
707 F.2d 1109 (9th Cir. 1983), judgment reversed on other grounds,
*Heckler v. Turner*, 470 U.S. 184 (1985).............................................................27

*Van Patten v. Vertical Fitness Grp., LLC*
847 F.3d 1037 (9th Cir. 2017) ...........................................................................23

*Weisbuch v. Cty. Of Los Angeles*
119 F.3d 778 (9th Cir. 1997) ...............................................................................8

*Wilson v. Lynch*
835 F.3d 1083 (9th Cir. 2016) .............................................................................7

*Yates v. Checkers Drive-In Restaurants, Inc.*
2019 WL 1437906 (N.D. Ill. April 1, 2019)......................................................23

*Ybarra v. Dish Network, LLC*
807 F.3d 635 (5th Cir. 2015) .......................................................................23, 24

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

47 C.F.R. § 64.1200 ............................................................................................23

47 U.S.C. § 227.......................................................................................... Passim

Fed. R. Civ. P. 12(b)(6).........................................................................................7

**Other Authorities**

*Artificial*, Dictionary.com, *available at*
https://www.dictionary.com/browse/artificial ...................................................26

*Artificial*, Merriam-Webster's Online Dictionary, *available at*
https://www.merriam-webster.com/dictionary/artificial ....................................26

## STATEMENT OF ISSUES

Plaintiff received text messages on her cellphone, which she claims were sent in violation of the Telephone Consumer Protection Act, 48 U.S.C. § 227 et seq. ("TCPA"). In her first cause of action, she alleged that the text messages were sent using an automatic telephone dialing system ("ATDS"), and thus violated the TCPA. In her second cause of action, she alleged that the text messages constituted "artificial or prerecorded voice messages" under the statute, and thus also violated the TCPA.

The district court dismissed both claims. As to the first, the district court held that Plaintiff failed to plead use of an ATDS because she did not (and could not) plead that a random or sequential number generator was used to generate the phone numbers that were dialed. ER 27-28. As to the second claim, the district court held that the text messages were just that – text messages – and not "artificial or prerecorded voice messages." ER-29. Plaintiff appealed the dismissal of the two causes of action. The questions presented are thus:

1. Did the district court properly interpret the TCPA and its definition of ATDS when, in accordance with the Supreme Court's unanimous holding in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), the district court held that a necessary feature of an ATDS is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called?

2.      Did the district court properly conclude that text messages do not constitute artificial or prerecorded voice messages for purposes of 47 U.S.C. §227(b)(1)(A)?

## SUMMARY OF ARGUMENT

The Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) was a seismic decision in TCPA jurisprudence.  In the years preceding *Facebook,* a stark circuit split had emerged concerning what functionality dialing equipment must possess to be an ATDS under the statute.  On one side of the split, the Ninth, Seventh, and Second Circuits interpreted the TCPA to mean that equipment need only have the capacity to store and dial telephone numbers automatically to be deemed an ATDS.  On the other side of the split, the Eleventh and Third Circuits interpreted the statute to mean that equipment must possess the ability to produce telephone numbers using a random or sequential number generator, and not just store a preset list of phone numbers to be dialed.  The Supreme Court granted certiorari "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential *phone numbers*."  *Facebook*, 141 S.Ct. at 1168 (emphasis added).

In a unanimous decision, the Supreme Court held that unless equipment has the capacity to use a random or sequential number generator to either store or

produce phone numbers to be called, then it does not constitute an ATDS for purposes of the TCPA. *Facebook*, 141 S.Ct. at 1173. In doing so, the Supreme Court overturned this Court's prior conclusion from *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) that "the statutory definition of ATDS includes a device that stores telephone numbers to be called, *whether or not those numbers have been generated by a random or sequential number generator*." *Id*. at 1043 (emphasis added). As a result, following *Facebook*, a dialer that stores numbers and dials them is not an ATDS unless it used a random or sequential number generator to generate the phone numbers that were dialed.

Recognizing the devastating effect that *Facebook* had on the viability of her ATDS claims, Plaintiff has advanced a variety of arguments that attempt to evade the Supreme Court's unanimous holding. These include: (1) the district court misapplied *Facebook* by determining that an ATDS must use a random or sequential number generator to store or produce *telephone numbers* rather than any number, such as an index number; (2) the district court incorrectly interpreted the word "produce" to mean *generate* rather than "to offer for viewing," AOB 18 n.12; (3) the district court's ruling renders the word "store" superfluous; and (4) notwithstanding whether or not the subject dialing equipment constitutes an ATDS

3

for TCPA purposes, the text messages it sent are the functional equipment of "artificial or prerecorded voice" messages for purposes of the statute.[1]

### *Plaintiff's ATDS Arguments were Properly Rejected by the District Court.*

Plaintiff's arguments regarding the district court's ATDS ruling have been made many times before by TCPA plaintiffs nationwide, and they are routinely rejected. The courts that reject these arguments do not merely say that *Facebook* controls the issue and move on. They undertake in-depth analyses on why the Supreme Court reached the conclusion that it did, including independent examination of the TCPA's legislative text, structure, history and purpose. The district court was no different.[2] In its dismissal Order, the district court comprehensively analyzed the

---

[1] Beyond the legal arguments made by Plaintiff, she has also resorted to branding the subject dialing equipment with the provocative name "SMS Blaster," which does not have any legal or industry significance. The transparently pejorative and made-up term serves as a futile attempt to suggest that equipment's ability to transmit many messages over a short period of time should impact the determination as to whether that equipment constitutes an ATDS for TPCA purposes. It does not; the standard is whether equipment has the capacity to generate telephone numbers using a random or sequential number generator.

[2] While the district court's dismissal must be affirmed, Reward Zone notes that the district court erred to the extent it stated that *Facebook* did "not conclusively resolve *how* a random or sequential number generator must be used – whether it must be used to generate the phone number itself, or whether it may also be used for indexing and selecting phone numbers." ER-26. The Supreme Court at various instances of the *Facebook* decision indicated that *phone numbers* were at issue in the ATDS analysis. *See, e.g., Facebook*, 141 S.Ct. at 1168 ("We granted certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential *phone numbers*") (emphasis added); *Id.* at

*Facebook* decision, as well as the detailed the analysis and reasoning offered by another California District Court decision in *Austria v. Alorica, Inc.*, 2021 WL 5968404 (C.D. Cal. Dec. 16, 2021).[3]  Because the allegations in the Third Amended Complaint ("TAC") are explicit that the subject dialing equipment *did not* generate telephone numbers using a random or sequential number generator, the district court properly dismissed the ATDS claims without leave to amend.

### The Ninth Circuit Has Already Rejected Plaintiff's ATDS Arguments.

This Court recently rejected Plaintiff's arguments.  In *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022), this Court held that "the text and context of the statute make clear that an [ATDS] must be able to generate and dial random or sequential [] phone numbers, not just any numbers." *Id.* at 1234.  That decision is directly on point and cannot be disregarded now.  *See Brickman v. United States*, 2022 WL 17826875 (9th Cir. Dec. 21, 2022) (citing *United States v. Wright*, 46 F.4th 938, 946 (9th Cir. 2022) ("[W]here a panel confronts an issue germane to the

---

1169 ("We conclude that the clause modifies both, specifying how equipment must either "store" or "produce" *telephone numbers*") (emphasis added)

[3] *Austria*'s conclusion that the only logical interpretation of ATDS is one in which equipment employed any storing or producing of telephone numbers to be called, provided that those telephone numbers were previously generated using a random or sequential number generator.  It reached this conclusion by comprehensively and exhaustively analyzing the four possible interpretations of ATDS articulated by the Seventh Circuit in *Gadelhak v. AT&T Servs, Inc.*, 950 F.3d 458, 464-67 (7th Cir. 2020).

eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit.") (internal quotations omitted)).  Ninth Circuit law mandates affirming the district court's dismissal of the ATDS claim.

***Text-Only Messages Are Not Artificial Voice Messages.***  Plaintiff's argument concerning "artificial or prerecorded voice" is unpersuasive.  Plaintiff asserts that *text* messages are artificial or prerecorded *voice* messages because "voice" can be used poetically to mean the conveying of a message, and text messages are either "prerecorded" or "artificial."  This interpretation must be rejected.  First, Plaintiff's interpretation distorts the plain meaning of artificial or prerecorded voice message.  The district court appropriately concluded that her "interpretation is simply beyond the bounds of common sense," finding that "it is not plausible that Congress intended the word 'voice' . . . to carry the tertiary, methaphorical meaning that Plaintiff suggests over th[e] primary meaning – especially since if Congress *had* intended to adopt Plaintiff's broad meaning, it could have easily chosen clearer, more literal terms to do so, such as 'medium of expression' or 'communication.'"  ER-28.  Presented with no legal authority that supports the argument that an inaudible *written* text message is the functional equivalent of an artificial or prerecorded *voice* message for TCPA purposes, the district court was correct to dismiss Plaintiff's claim.  Second, adopting Plaintiff's

interpretation would turn every one of us into potential TCPA violators. Anytime anyone sends a text message, they would be sending an artificial or prerecorded voice message, and they thus would need to wade through the thicket of TCPA regulations. That certainly could not have been Congress's intent.

For the foregoing reasons, as detailed further below, the district court's dismissal Order should be affirmed in all respects.

## ARGUMENT

### I. Standard Of Review

This Court reviews de novo the district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Atkinson v. Meta Platforms, Inc.*, 2021 WL 5447022, *2 (9th Cir. Nov. 22, 2021). This Court also reviews *de novo* questions of statutory interpretation informing dismissal*, Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1090 (9th Cir. 2021), and denials of leave to amend for abuse of discretion. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016).

Dismissal in accordance with Fed. R. Civ. P. 12(b)(6) is appropriate where the pleading lacks either a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, to survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that end, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even where facts are accepted as true, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on [her] . . . claim." *Weisbuch v. Cty. Of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted). Likewise, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. The District Court Properly Held That Plaintiff Failed To Plead Use Of An ATDS

### A. The District Court's Ruling Is Consistent With The TCPA's Text, Supreme Court Precedent, And Authority From This Court

The TCPA defines "automatic telephone dialing system" as a piece of equipment that has the capacity to both "store or produce telephone numbers to be called, using a random or sequential number generator," and to "dial such numbers." 47 U.S.C. § 227 (a)(1)(A)-(B). In this case, Plaintiff does not allege that the numbers dialed were generated using a random or sequential number

8

generator or stored using a random or sequential number generator; rather, according to Plaintiff, the dialer took a preset list of telephone numbers to call (all of which were provided to Reward Zone by consumers themselves), assigned an "index" number to those numbers, and then dialed the numbers in order, based on the "index" number. The plain text of the statute confirms that this is not an ATDS. Assigning "index" numbers to a list of telephone numbers is not using a random or sequential number generator to store or produce those numbers – it is instead using the number generator to choose the order in which to dial the phone numbers. As the district court found: "Plaintiff's claim, which concerns a program that merely uses a number generator to generate and select index numbers . . . does not state a claim as a matter of law." ER-27-28.

This textual interpretation is also consistent with the Supreme Court's holding in *Facebook*. In *Facebook*, the Supreme Court granted certiorari to resolve a split among the circuits as to the proper interpretation of ATDS. The Supreme Court framed the issue as follows: "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential *phone numbers*." *Facebook*, 141 S.Ct. at 1168 (emphasis added). The Supreme Court held that an ATDS must generate or store numbers using a random or sequential number generator.

Further, after the district court's decision in this case, the Ninth Circuit issued two separate opinions that again confirm that the district court got it right. Those decisions were *Borden v. eFinancial LLC*, 53 F.4th 1230 (9th Cir. 2022) and *Brickman v. United States*, 2022 WL 17826875 (9th Cir. 2022). As explained below, both *Borden* and *Brickman* address the arguments that Plaintiff now raises. This Court should reject those same arguments again, just as it rejected them before.[4]

**B.    Plaintiff's Arguments Are Meritless**

Plaintiff's appeal on the ATDS issue consists of three parts: first, Plaintiff argues that when the TCPA's statutory definition of ATDS uses the word "number" in "random or sequential number generator," the word number may refer to something other than a telephone number; specifically, that it may refer to an index number. The second and third parts are related; Plaintiff argues that the word "produce" has been misinterpreted to mean "generate" and that this misinterpretation has served to exclude alternative definitions such as "to offer to view or notice," while also arguing that courts, including the district court, have rendered the word "store" superfluous by applying the *Facebook* decision to

---

[4] The amicus brief for which Electronic Privacy Information Center and National Consumer Law Center have sought leave to file asserts the same ATDS argument as Plaintiff; that a random or sequential number generator need not generate telephone numbers to constitute an ATDS for TCPA purposes. Its arguments are thus similarly foreclosed by *Borden* and *Brickman* and must be rejected as a result.

mandate that an ATDS must generate the telephone numbers it dials. None of Plaintiff's arguments are novel, as each one has been previously addressed by numerous courts since the *Facebook* decision, including Courts of Appeal in this and another Circuit. The consensus conclusion is that Plaintiff is wrong.

### 1. *Random or Sequential Number Generators Must Generate Telephone Numbers*

As referenced above, this Court recently issued two separate decisions which squarely reject Plaintiff's argument that generating index numbers as part of the storage process is sufficient to transform dialing equipment into an ATDS for TCPA. Those rulings compel affirmance here.

The first decision, *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022), concerned a challenge to technology that the Plaintiff alleged used a sequential number generator to pick the order in which to call customers who had provided their telephone numbers. According to that plaintiff, this type of number generator qualified as an ATDS under the TCPA. That argument is no different than the argument advanced by this Plaintiff; that an ATDS was used because random or sequential number generators were used to assign index numbers to telephone numbers (which the equipment does not itself generate), and those index numbers were then used to determine the order of dialing.

Addressing this argument head-on, this Court held that an "automatic telephone dialing system" must randomly or sequentially generate *telephone*

numbers, not just any numbers. *Id* at 1233. In reaching that conclusion, *Borden* went through an in-depth statutory analysis for why "number" in "random or sequential number generator" could *only* refer to a "telephone number." That conclusion was founded on three different rationales:

> 1. The structure of the sentence "to store or produce telephone numbers to be called, using a random number generator" suggests that "number generator" relates to "telephone numbers." *Id.* at 1233.

> 2. The definition of ATDS incorporates as a second prong the capacity of equipment to "dial such numbers," a self-evident reference to telephone numbers generated in accordance with the first prong.[5] *Id*.

> 3. The TCPA uses telephone number and number interchangeably throughout the statute, specifically at subsections (c)(3)(k) and (e)(8)(B). In fact, the only instances in which the word "number" does *not* refer to a telephone number is when the statute makes plain that the word is used to refer to an amount: *see e.g.,* 227(b)(2)(G)(i)(I) (". . .significant number of complaints to the Commission. . . "); 227(b)(2)(I)(iii) ("the number of such calls that a calling party may make to a called party"); 227(h)(2)(B) (". . . [t]he number of citations issued by the Commission . . .").

53 F.4th at 1233-34.

---

[5] It is particularly significant that neither the "random or sequential number generator" in § 227(a)(1)(A) nor § 227(a)(1)(B)'s provision "to dial such numbers" specify that "number" is "telephone number." Just as the context of the statute unquestionably results in the meaning of "to dial such numbers" to be "to dial such *telephone numbers,*" the same is true that, given the context of the statute, "random or sequential number generators" unquestionably means the random or sequential number generation of telephone numbers.

Additionally, *Borden* also noted that the Supreme Court expressly framed the issue on which it granted certiorari thusly: "to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential *phone numbers*." *Facebook*, 141 S.Ct. at 1168 (emphasis added). As a result of the foregoing, *Borden* came to the decisive conclusion that the "numbers" which equipment must generate to be deemed an ATDS for TCPA purposes *must be* telephone numbers; and absent the capacity to generate *telephone numbers*, equipment cannot be an ATDS under the statute.

Thereafter, this Court issued its decision in *Brickman v. United States*, 2022 U.S. App. LEXIS 35286 (9th Cir. Dec. 21, 2022). In *Brickman*, this Court framed the issue on appeal as "whether a TCPA-defined autodialer must use an RSNG [random or sequential number generator] to generate the telephone numbers that are dialed." *Brickman* held that it must. *Brickman* stated that it could not "disregard an earlier published decision of this circuit that is directly on point." *Id.* at *6 (*quoting United States v. Wright*, 46 F.4h 938, 946 (9th Cir. 2022)). This Court is similarly bound to adhere to the earlier *Borden* and *Brickman* decisions that are directly on point.[6] The district court's dismissal must be affirmed as a result.

_____

[6] Plaintiff's suggestion that there is decisional case law on both sides of this issue is, at best, a half-truth. First, the only Circuit Courts that have addressed this issue have

### 2. The Word "Produce" is not Susceptible of the Alternative Definitions Offered by Plaintiff

In an effort to evade the binding effect of *Borden* and *Brickman,* Plaintiff alternatively argues that the district court's dismissal should be reversed because the word "produce" was misinterpreted. Here, Plaintiff's argument is that "produce" does not mean "create" or "generate," but rather is defined by Merriam Webster's Dictionary to mean "to offer to view or notice." The Eight Circuit Court of Appeals was presented with this precise argument in *Beal v. Outfield Brew House, LLC*, 28 F.4th 391 (8th Cir. 2022). In rejecting it, the court described similar efforts to cite to dictionary definitions and common uses of a term as "the kind of isolated and contextless approach" that the Supreme Court has previously rejected. *Beal*, 29 F.4th at 394-395 (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter."). This Court should adopt the Eight Circuit's persuasive reasoning and similarly reject Plaintiff's argument.

In *Beal*, the appellant had argued that the term "produce" includes a random selection of phone numbers from an existing lists of contacts, pointing to dictionary definitions and common uses of the term "produce" to mean "select" or

---

rejected Plaintiff's argument (including this Court). Second, Plaintiff does not cite any authority in which a court has accepted her argument.

"bring forth." Like Plaintiff here, the appellant in *Beal* also argued that the district court's interpretation inappropriately writes "generate" into the statute. *Beal* dispatched with that argument, however, finding that "a random number generator does not *produce* by selecting a random number," rather, "a random number generator produces by *generating* a random number." *Id*. at 394-395 (emphasis added). The *Beal* Court further noted that "[w]hile a phrase may be susceptible to certain meanings when viewed in isolation, its plain meaning is 'often clarified by the remainder of the statutory scheme.'" *Id*. (quoting *United States Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* 484 U.S. 365, 371 (1988)). Thus, in concluding that "[j]ust because 'produce' *can* mean 'select' in other contexts does not mean it includes 'select' in the ATDS context," *Beal* aptly noted that "[w]hile dictionary definitions and common uses of a word can be helpful, they will derail accurate interpretation if [a court] improperly determine[s] that the meaning of a term used in a statute includes *any* existing definition or use of that term." *Id.* at 395 (emphasis added).

Underscoring how out-of-context Plaintiff's alternative definitions are, she offers an analogy to video blackjack to argue that "produce" need not mean generate. While not citing to any authority as to how such machines operate, Plaintiff nevertheless suggests the video blackjack number generator is a prime example to which the Court should look for the proper interpretation of random or

sequential number generator for TCPA purpose. Plaintiff's blackjack analogy suffers from the same problem that plagued her theories on the alternative definitions of "produce." It "is the kind of isolated and contextless approach" that courts reject. It is also entirely irrelevant. As noted in *Facebook*, Congress's intent in enacting the TCPA was to "target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Facebook* at 1169-1171. The parser, number generator, or any other technology powering a video blackjack terminal is decidedly *not* the unique type of telemarketing equipment that Congress targeted in enacting the TCPA. Moreover, *Beal* offers instructive analogies of equipment which "produces" in other contexts, contrary to that offer by Plaintiff. "While subjects in other contexts may produce by selecting, a generator produces by generating. An electrical generator produces by generating electricity. A password generator produces by generating passwords. And a random number generator produces by *generating* a random number." *Beal*, 29 F.4th at 394. Plaintiff's acknowledgment that the equipment purportedly used to contact her did not generate the telephone numbers it dialed necessarily means that it did not "produce telephone numbers to be called" for TCPA purposes.

16

### 3. *Footnote 7 to the Facebook Decision Does Not Represent a Loophole in an Otherwise Unanimous Holding*

Plaintiff suggests that courts, including the district court, have effectively rendered the word "store" in the ATDS definition superfluous by failing to give proper weight to footnote 7 to the *Facebook* decision. Much ink has been spilled discussing the impact of footnote 7, including by this Court. The consensus that has emerged is that *Facebook*'s footnote 7 does not indicate that the Supreme Court believed that systems which randomly select from non-random phone numbers are ATDS for TCPA purposes. The *Borden* Court summarized that consensus as follows:

> [T]he myopic focus on a single sentence in a footnote – hardly a holding – ignores the broader context discussed by the Court, including how the Court itself characterized the issue as "whether an autodialer must have the capacity to generate random or sequential *phone* numbers. *Facebook,* 141 S.Ct. at 1168. In reality, Footnote 7 merely addressed how an autodialer could both "store" and "produce" telephone numbers without rendering those two terms superfluous. The Court cited an amicus brief describing patents on technology that 'used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing). . . As detailed in Footnote 7, while the Court illuminated the space between the concepts of "store" and "produce," it also recognized that "Congress may have employed a belt and suspenders approach in writing the statute.

53 F.4th at 1234-1235.

17

Plaintiff argues that excluding dialing platforms that index and store telephone numbers to be called using number generators violates footnote 7 and "carve[s] out half the test for whether a system is an ATDS." However, again, this is precisely the sort of "acontextual reading of a snippet divorced from the context of the footnote and [] entire opinion" that *Borden* counseled against. "Nothing in the [*Facebook*] opinion suggests that the [Supreme] Court intended to define an autodialer to include the generation of any random or sequential number." *Id.* at 1236. The Supreme Court explicitly characterized the issue as "whether an autodialer must have the capacity to generate random or sequential *phone numbers*." *Facebook*, 141 S.Ct. at 1168.

This Court is not alone in rejecting attempts by plaintiffs to salvage their ATDS claims by clinging to footnote 7. Courts have routinely and repeatedly done so nationwide.[7] Invariably, they largely all note the same important aspect of that footnote: in referencing the device that might both store and produce numbers randomly generated, the Court explicitly cited to an amicus brief which described

---

[7] *See e.g., Tehrani v. Joie de Vivre Hospitality, LLC*, 2021 WL 3880643 (N.D. Cal. Aug. 31, 2021); *DeClements v. Americana Holdings LLC*, 2021 WL 5138279 (D. Ari. Nov. 4, 2021); *Timms v. USAA Federal Savings Bank*, 2021 WL 2354931 (D. S.C. June 9, 2021); *Barry v. Ally Financial, Inc.*, 2021 WL 2936636 (E.D. Mich. July 13, 2021); *Mina v. Red Robin Int'l, Inc.*, 2022 WL 2105897 (D. Colo. June 10, 2022); *Atkinson v. Pro Custom Solar LLC*, 2022 WL 4071998 (W.D. Tex. Sept. 1, 2022); *Barnett v. First Nat'l Bank of Omaha*, 2022 WL 627028 (W.D. Ky. March 3, 2022).

technology that generated a list of telephone numbers using a random or sequential number generator and then stored those numbers. The common throughline between footnote 7 and the rest of the *Facebook* holding is the paramount necessity that equipment must generate telephone numbers using a random or sequential number generator to be deemed an ATDS under the TCPA.

> **4.** ***Neither the Subject Equipment Nor Predictive Dialers Are ATDS Absent the Capacity to Generate Telephone Numbers Using Random or Sequential Number Generators***

Finally, Plaintiff, in her footnote 7, argues that the equipment that was allegedly used to send messages to her functions identically to traditional predictive dialers and that, as a result, "[i]f a predictive dialer being used in predictive dialing mode is treated legally as an ATDS, so too must" the subject equipment because "they rely on similar number generation." This argument is flawed for the very fact that the Federal Communications Commission ("FCC"), on whose authority Plaintiff relies for a description of a predictive dialer's functionality, stressed that "the principal feature of predictive dialing software is a timing function, not number storage or generation." 18 FCC Rcd. 14014, 14092 (2003). In fact, in concluding as part of the 2003 Order that predictive dialers fall within the meaning and statutory definition of an ATDS, the FCC expressly and explicitly disregarded a particular aspect of a predictive dialer's functionality: the fact that such equipment "relies on a given set of numbers." *Id.* at 14092. For that

reason alone, predictive dialers would otherwise be excluded from the TCPA's ATDS definition as clarified by *Facebook*; their functionality does not concern telephone number generation.

Plaintiff's brief on this issue contains an express admission that brings her position into further conflict with the *Facebook* decision, and further serves to underscore the futility of her position. Plaintiff argues that "predictive dialers and SMS blasters operate in the exact manner described by the Supreme Court in footnote 7, and have for decades." AOB 32, n.23. The Supreme Court was explicit in stating that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuance problems when Congress meant to use a scalpel." *Facebook*, at 1169-71. Because Plaintiff has acknowledged that the subject dialing equipment she described in the TAC, like predictive dialers, do not generate the telephone numbers dialed, she has conceded that she has not alleged that an ATDS was used, and the district court was correct to dismiss her TCPA claims with prejudice.

## III. The District Court Properly Held That Text Messages Cannot Support an Artificial/Prerecorded Voice Claim

The TCPA prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice" to a cellular phone. 47 U.S.C.

20

§ 227(b)(1)(A)(iii). Plaintiff contends that an allegedly unauthorized text message—consisting only of text—violates this provision of the TCPA. As the district court held, Plaintiff's interpretation is "simply beyond the bounds of common sense." ER-28. This Court should affirm.

As this Court has explained in interpreting the TCPA, "[i]n construing the provisions of a statute, we first look to the language of the statute to determine whether it has a plain meaning." *Satterfield v. Simon Schuster*, 569 F.3d 946, 951 (9th Cir. 2009). "The preeminent canon of statutory interpretation requires" the Court "to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, [the Court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning," and "must be read in their context and with a view to their place in the overall statutory scheme." *Id.* at 153 (internal quotations omitted and alterations in original).

Starting with the plain meaning of the phrase "artificial or prerecorded voice," it is clear that sound is required and that text-only is insufficient. Courts resort to dictionaries in determining the plain meaning of the statute. *See*, *e.g.*, *Satterfield*, 569 F.3d at 954. Nevertheless, the mere inclusion of a given definition in the dictionary does not mean that that particular definition is the ordinary

meaning. "That a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 568 (2012) (emphasis in original).

Voice is defined as: "sound produced by vertebrates by means of lungs, larynx, or syrinx." *Merriam-Webster's Online Dictionary*, *available at* https://www.merriam-webster.com/dictionary/voice. Many other definitions for voice likewise require sound. *Id.* In the context in which the TCPA applies—telephone calls—only a definition of voice requiring sound could be the ordinary meaning, not a metaphorical definition such as "instrument or medium of expression," for which Plaintiff advocates. AOB 22-23. Each court to address this issue has reached that same conclusion. *See, e.g.*, *Risher v. Adecco Inc.*, No. 19-cv-05602-RS, 2022 WL 17082667, at *2 (N.D. Cal. Nov. 18, 2022) (rejecting a claim that a text message is an "artificial or prerecorded voice" under the TCPA because "in common parlance, text messages are simply not considered 'voices'"); *Mina v. Red Robin Int'l, Inc.*, No. 20-cv-00612-RM-KLM, 2022 WL 17547830, at *4 (D. Colo. Aug. 19, 2022) (same); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 3:19-cv-592 (JAM), 2022 WL 2802347, at *3 (D. Conn. July 18, 2022) (The TCPA "has only one plausible meaning: text messages without an audio component are not prerecorded voices."); *DeMesa v. Treasure Island, LLC*, No. 2:18-cv-02007-JAD-NJK, 2022 WL 1813858, at *3 (D. Nev. June 1, 2022)

22

(rejecting an argument that a text message is a "voice" because "'voice' and 'text' are mutually exclusive under the TCPA"); *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639 (N.D. Ill. 2019) (47 C.F.R. § 64.1200(b)(3), a regulation aimed at artificial or prerecorded voice messages, does not apply to text messages); *Yates v. Checkers Drive-In Restaurants, Inc.*, 2019 WL 1437906, *3 (N.D. Ill. April 1, 2019) (same); *Reese v. Marketron Broadcast Solutions, Inc.*, 2018 WL 2117241, *6 (E.D La. May 8, 2018) (same).[8]

*Ybarra v. Dish Network, LLC*, 807 F.3d 635 (5th Cir. 2015), in which the Fifth Circuit interpreted the phrase "artificial or prerecorded voice" in connection with a telephone call, also supports the conclusion that a mere text message cannot constitute an "artificial or prerecorded voice." *Ybarra* held that "[t]o be liable under the 'artificial or prerecorded voice' section of the TCPA . . . a defendant

---

[8] Plaintiff contends that the TCPA should be interpreted broadly to include soundless text messages because doing so is purportedly consistent with Congress's remedial purpose in enacting the TCPA. AOB 53-56. Plaintiff, however, ignores that the statutory term "artificial voice" is not ambiguous. Thus, just as it did in *Satterfield*, this Court should rely on the plain language of the TCPA. Importantly, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017), which did not determine that the TCPA is ambiguous, but rather interpreted the FCC's orders and rulings pertaining to the phrase "prior express consent," does not require a different conclusion. It is also worth keeping in perspective that a broad remedial purpose does not necessary justify broadly interpreting every term in the statute. Just as *Facebook* concluded that simply because "Congress was broadly concerned about intrusive telemarketing practice . . . does not mean it adopted a broad autodialer definition," the same holds true for the statute's use of "artificial voice." *Facebook*, 141 S.Ct. at 1172. In fact, the principle holds more true with respect to "artificial voice" because there is absolutely no ambiguity with the term.

must make a call and an artificial or prerecorded voice must actually play," i.e., "the prerecorded voice must 'speak' during the call." *Id.* at 640-41. Plaintiff alleges that she received a text-only message from or on behalf of Reward Zone. That message thus did not speak and consequently Reward Zone cannot be held liable under the artificial or prerecorded voice provisions of the TCPA.

The plain language interpretation of § 227(b)(1)(A)(iii) in which "voice" requires a sound is also consistent with § 227(d)(3), which governs "[a]rtificial or prerecorded voice systems." In § 227(d)(3), Congress directed the FCC to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." *Id.* Among the minimum standards contemplated for these types of calls was a requirement that "any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls." 47 U.S.C. § 227(d)(3)(B). Of course, a text-only message, like that at issue here, cannot seize a phone line, let alone release that seizure, confirming that an "artificial or prerecorded voice" is not intended to include such messages.[9] While

---

[9] Section 227(d)(3) was intended to address seizure of phone lines by calls from an "artificial or prerecorded voice." *See Facebook*, 141 S.Ct. at 1167 ("Congress found autodialer technology to be uniquely harmful. It threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines

these minimum standards were developed before the advent of text messages, the FCC never updated its rules enacted pursuant to § 227(d)(3)(B) to capture text messages. This is true even though the FCC has deemed a text message a "call" for purposes of the autodialer provision, further confirming that artificial and prerecorded calls were never meant to capture text messages.

Plaintiff's arguments to the contrary are meritless. Plaintiff first argues that "there are dictionary definitions that extend voice to other forms of communication," beyond sound-based communication. AOB 50-51. However, it is not enough that "some" definitions support Plaintiff's position. Rather, the plain meaning of the TCPA is determined by reference to the "ordinary" meaning of the word. As *Taniguchi* explains, "[t]hat a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." 566 U.S. at 568 (emphasis in original).

Plaintiff's contention that "a statutory definition of voice which requires use of lungs, larynx or syrinx would axiomatically preclude artificial voices" fares no better. AOB 51-52. Plaintiff reads the word "voice" in isolation, instead of as part of the phrase "artificial or prerecorded voice," in which "artificial" is an adjective that modifies "voice." In this circumstance, the plain meaning of "artificial …

---

from being utilized to receive calls from those needing emergency services.' H. R. Rep. No. 102–317, p. 24 (1991).").

voice" is a voice that is "humanly contrived," i.e., not occurring in nature, such as a computer-generated voice. *Artificial*, *Merriam-Webster's Online Dictionary*, *available at* https://www.merriam-webster.com/dictionary/artificial ("humanly contrived (see CONTRIVE sense 1b) often on a natural model : MAN-MADE"); *see also Artificial*, *Dictionary.com*, *available at* https://www.dictionary.com/browse/artificial ("made by human skill; produced by humans (opposed to natural)"; "imitation; simulated; sham").

Nor does the district court's order conflict with binding FCC Rules. Plaintiff contends that because the FCC deemed a text message a "call" for purposes of § 227(b)(1)(A), a text message can violate the TCPA if it uses "either an ATDS or an artificial or prerecorded voice." AOB 52-53. According to Plaintiff, defining "voice" to require an audible sound would write the words "artificial or prerecorded voice" out of the statute for text messages. Plaintiff is wrong. A "text" call could come via MMS (Multimedia Messaging Service), which could include audio sound with an artificial or prerecorded voice. Thus, all of the language at issue still has meaning for both traditional voice calls and text messages.

Moreover, Plaintiff's proffered interpretation is overbroad, and would not only capture person-to-person communications but would also lead to patently absurd results in the process. The TCPA, with the FCC's deeming rule, makes it

"unlawful for any person" to send a text message without "prior express consent" using an "artificial or prerecorded voice … to any telephone number assigned to a …. cellular telephone service…" 47 U.S.C. § 227(b)(1)(A). Text messages are necessarily sent to devices assigned to cellular telephone services. Under Plaintiff's definition, where text alone is enough to implicate this portion of the statute, it would be illegal for any human to text another human without obtaining some form of prior consent. This would include, for example, a parent who uses the class list to ask a new family for a playdate, send out a birthday invitation, or provide notification of a school closure, as well as a clergy member who sends a text to welcome a new congregant. This not only cannot be the law, it was also not Congress's purpose in enacting the statute, by Plaintiff's own admission and confirmed by the Supreme Court. *See* AOB 52-56 (arguing that Congress intended with the language "artificial or prerecorded voice" to prohibit agentless calls);[10]

---

[10] Plaintiff relies heavily on legislative history, particularly statements by Steve Hamm, who was administrator of the South Carolina Department of Consumer Affairs, as part of an argument that "voice" should be construed broadly. However, "testimony of witnesses before congressional committees prior to passage of legislation generally constitutes only 'weak evidence' of legislative intent" (if it is evidence at all). *Turner v. Prod*, 707 F.2d 1109, 1119 (9th Cir. 1983), judgment reversed on other grounds, *Heckler v. Turner*, 470 U.S. 184 (1985); *Pac. Ins. Co. v. United States*, 188 F.2d 571, 572 (9th Cir. 1951) (holding that a "statement made by a witness before the congressional committee considering the legislation" was "not entitled to consideration in determining legislative intent"). Moreover, it is important to note that Congress's intent was not the same when it sought to restrict ATDS calls as it was when it sought to restrict voice calls. With respect to ATDS

27

*see also Facebook*, 141 S.Ct. at 1167 (noting that Congress enacted the TCPA to address robocalls).

## CONCLUSION

The Court should affirm.

Dated: January 24, 2023    KLEIN MOYNIHAN TURCO LLP


By _____
                *s/Neil Asnen*
                NEIL ASNEN

        Attorneys for Defendant-Appellee
        REWARD ZONE USA LLC

---

call it was to prohibit agentless calls. With voice calls, the concern was line seizure. *Facebook*, 141 S.Ct. at 1167.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth

Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a

typeface of 14 points, and contains 7,253 words.

Dated: January 24, 2023    KLEIN MOYNIHAN TURCO LLP


By        _____
                    *s/Neil Asnen*
                    NEIL ASNEN

            Attorneys for Defendant-Appellee
            REWARD ZONE USA LLC