IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Circuit Court Case No. 22-55517**

LUCINE TRIM, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

PLAINTIFF-APPELLANT,

V.

REWARD ZONE USA LLC, *ET. AL.*

DEFENDANT-APPELLEE.

**PLAINTIFF-APPELLANT LUCINE TRIM'S PETITION FOR
HEARING ON INITIAL EN BANC REVIEW**

APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT CASE NO.: 2:20-CV-01027-SVW-KS
(HONORABLE STEPHEN V. WILSON)

**LAW OFFICES OF TODD M. FRIEDMAN**
Todd M. Friedman, Esq. (SBN 21675)
Adrian R. Bacon Esq. (SBN 280332)
Thomas E. Wheeler (SBN 308789)
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
Email: tfriedman@toddflaw.com

*ATTORNEYS FOR APPELLANT*

## TABLE OF CONTENTS

**RULE 35 STATEMENT AND INTRODUCTION** ................................................1

**STANDARD OF REVIEW** .......................................................................5

**STATEMENT OF THE CASE**……………………………………………………..6

**REASONS FOR EN BANC REVIEW**……………………………………………..7

    **I. The Definition of ATDS is an Important Developing Question of Law**…7

    **II. Borden Contradicts Supreme Court Precedent**……………………..……9

    **III. Borden And Brickman Present An Intra-Circuit Conflict That Must Be Resolved**………………………………12

**CONCLUSION**......................................................................................15

**CERTIFICATE OF COMPLIANCE** ..............................................................16

**CERTIFICATE OF SERVICE** ...................................................................17

# TABLE OF AUTHORITIES

**Cases**

*ACA International v. Federal Communications Commission*, 885 F.3d 687, 703 (D.C. Cir. 2018) ..................................................................................9

*Barr v. American Association of Political Consultants, Inc*., 140 S.Ct. 2335 (2020) ..............................................................................................8

*Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022)…………………...passim

*Brickman v. United States*, 56 F.4th 688, 691-93 (9th Cir. 2022) ................... passim

*Duncan v. Walker*, 533 U.S. 167, 174, (2001)..........................................................12

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021)…………………….…passim

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) ..........................................................12

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)…………...passim

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011) ...........................12

*Panzarella v. Navient Solutions, Inc*., 37 F.4th 867 (3rd Cir. 2022)…………passim

*Soliman v Subway Franchise Advertising Fund Trust, Ltd*. Case No. 22-1726 .......8

*Van Buren v. United States*, 141 S.Ct. 1648 (2021) .........................................3, 12

**Statutes**

47 U.S.C. § 227(a)(1)..............................................................................................11

Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq..................................1

**Rules**

F.R.A.P. 35(c) ...........................................................................................................5

Ninth Circuit Rule 5.2 ..............................................................................................5

Rule 12(b)(6)..............................................................................................................6

7 FCC RCD. 8752 (F.C.C. SEPTEMBER 17, 1992)………………………………8

8 FCC Rcd. 14014 (2003)…………………………………………………………8

23 F.C.C. Rcd. 559 (JAN 4, 208)…………………………………………………8

30 F.C.C Rcd. 7961 (2015)………………………………………………………..8

## RULE 35 STATEMENT AND INTRODUCTION

Within the last 90 days, and in the aftermath of the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ("*Facebook*"), this Court issued two very different opinions concerning the definition of Automatic Telephone Dialing System ("ATDS") as defined under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). In the first decision, this Court determined the phrase "to store of produce telephone numbers to be called, using a random or sequential number" should be narrowly interpreted to require that an "autodialer must randomly or sequentially generate telephone numbers, not just any number." *See Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022) ("*Borden*"). Just weeks later, in a scathing (and compelling) opinion, Judge Van Dyke, on a different panel addressing the same legal analysis, found *Borden's* reasoning was "just wrong" "mangle[s] the text's meaning" and conflicts with the Supreme Court's emphasis on storage as one of the disjunctive elements of the ATDS definition as justification for why it overturned *Marks v Crunch*. *Brickman v. United States* 56 F.4th 688, 692 (9th Cir. 2022) ("*Brickman*"). *Brickman's* concurrence provided a thorough plain meaning, textualist, and technological evisceration of *Borden*, calling the opinion into serious question.[1] Neither

---

[1] Incidentally, the opinion largely mirrors the arguments raised by Appellant Trim in her Opening Brief that was filed before either decision was published.

*Brickman* nor *Borden* follow the Third Circuit's treatment of the same issue in *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3rd Cir. 2022) ("*Panzarella*").[2]

The confluence of these multiple inapposite orders – *Borden*, *Brickman*, *Facebook*, and *Panzarella*,[3] demonstrate that *Borden* conflicts with United States Supreme Court authority, that consideration by a full *en banc* panel is necessary to secure and maintain uniformity of this Court's decisions, and that the interpretation of ATDS following *Facebook* involves a developing and important question of law that is currently seeing a great deal of appellate activity. Judge Van Dyke's concurrence in *Brickman*, if issued only weeks earlier (i.e. before *Borden*), would have been the law of this Circuit. This Court is in disagreement with itself regarding the definition of ATDS, with one panel siding with the view which gave rise to this appeal, and another panel siding with the view argued by Trim, but being compelled to follow the law of the Circuit. These competing decisions must be reconciled via *en banc* review. Trim's case presents the ideal vehicle to do so.

*Borden* was wrongfully decided and conflicts with Supreme Court authority. As the Brickman concurrence points out, the opinion does not follow the Supreme Court's instructions in *Facebook* by excising half of the disjunctive "storage"

---

[2] *Panzarella* suggests in dicta that the Third Circuit may treat Reward Zone's dialer as an ATDS, contrary to *Borden*, but for different reasons than articulated in *Brickman*. *Panzarella* did not reach the factual issue presented in Trim's appeal.

[3] There are other appeals in other Circuits on this question as well. Reconciling the Ninth Circuit's position on the issue would aid in the proper development of law.

language from the statute. This is striking in light of storage being emphasized in *Facebook*'s footnote 7[4] as an illustration of why it overturned this Court's test in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) ("*Marks*"). *Borden* also analyzes "random or sequential number generator" as a matter of syntax when this term already has a well-defined technical meaning in the field of computer science and software engineering. *See Van Buren v. United States*, 141 S.Ct. 1648, 1657 (2021) (technical terms should be interpreted under their technical meaning). Additionally, *Borden* conflates the term "number generator" with "telephone number generator" inserting limiting language into the statute that was not put there by Congress and undermines the purpose of the TCPA.[5] *Borden* also, without any technological basis, found that giving meaning to the term "store" would turn every cellular telephone into an ATDS, but this is simply untrue, as a cellular telephone does not rely on number generators to store telephone numbers to be dialed by the system which is storing the numbers,[6] as

---

[4] "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021).

[5] Judge Van Dyke's wood lathe illustration frames the problem with *Borden's* limitation from a textual analysis.

[6] This is where the *Panzarella* court's opinion can reconcile all of these opinions – the "to be called" language is a limiting phrase which prevents the overbreadth referenced by the Supreme Court, and by the *Borden* panel.

is the case with dialing telephone numbers as part of a preprogrammed autodialing campaign. *Borden* further ignores the broader purpose of the TCPA in prohibiting automatic dialing that presents a nuisance to commercial and residential consumers, which the FCC addressed in 1992, when it applied the statute to predictive dialers, which do not self-generate lists of telephone numbers, but rather which mass-dial from stored lists using campaigns.

Trim's appeal presents an ideal fact pattern for this Court to clarify these recent ATDS rulings. Trim included actual dialer code in her complaint containing a sequential number generator that was used in Reward Zone's platform, and has explained how the technology works, and how such code is programmed to both store and produce telephone numbers to be called in an automated fashion by the SMS blasting platform *en masse* without consent via preprogrammed campaigns with no human involvement. No appeal, not *Borden*, *Marks*, *Brickman, Panzarella* or *Facebook*, have done this, despite the term "random or sequential number generator" being integral to the statute. Unlike these decisions, where such source code was not in the record and could not be analyzed, this case lends strong factual support to the concurring opinion in *Brickman*, which emphasized that a number generator is a well understood tool used in software engineering, and should be proscribed its technological definition. Trim's appeal also gives factual specificity to what the Supreme Court was referring to in *Facebook's* footnote 7.

The Supreme Court in *Facebook* was concerned that *Marks* failed to require a random or sequential number generator in its definition, due to a syntactical reading of the statute. Trim identified the number generator, and alleged it in her complaint, just as the Supreme Court required. Yet, strict adherence to *Borden* would require a panel here to do as the panel did in *Brickman* and adhere to the law of the Circuit, despite doing so going directly against the Supreme Court's instructions in *Facebook*. Absent a sister panel abandoning this Court's practice of following the law of the circuit, this Court's disagreement with itself as recognized in *Brickman* can only be addressed via *en banc* review. It would be inefficient for a panel to consider argument on this issue when *en banc* review is necessary to resolve a developing intra-Circuit split in authority. On these ground, Trim moves for initial *en banc* review, pursuant to Ninth Circuit Rule 5.2 and F.R.A.P. 35(c).

## STANDARD OF REVIEW

F.R.A.P. 35 permits en banc determination when either "(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." F.R.A.P. 35(a). A petition should address whether a decision conflicts with Supreme Court authority, whether consideration by the full court is necessary to secure and maintain uniformity of the court's decisions, and whether the proceeding involves one or more questions of exceptional importance, including conflicts with other

Circuit-level authority. F.R.A.P. 35(b). Initial *en banc* must be requested by the due date of Appellee's brief. F.R.A.P. 35(c), Ninth Circuit Rule 5.2.

## STATEMENT OF THE CASE

This appeal is from the January 28, 2022 order of the District Court partially granting Reward Zone's motion to dismiss for failure to state a claim under Rule 12(b)(6). Trim's allegation was that solicitation text messages were blasted out *en masse* using an SMS blaster, which is a traditional campaign-based dialing platform that automatically sends thousands of text messages to thousands of people, and was used in this fashion to automatically dial Trim. Trim alleged that the SMS blaster was programmed with source code that relied upon number generators to both store and produce the telephone numbers that the system called. Plaintiff's complaint contained a specific example of such number generators used by an SMS blaster alleged to function similarly to the one used by Reward Zone. These telemarketing text messages were sent to consumers without prior express consent, as the lead vendor who sold Reward Zone Trim's (and others') contact information, laundered consumer data from other sources and misrepresented that obtained it through an organic opt in on its website in order to manufacture consent leads. Thus, Reward Zone was mass-dialing thousands of consumers without consent, using a system which relied on number generators to both store and produce telephone numbers to be called, just as Congress intended to prohibit.

*Borden*, as law of the Circuit, would require the District Court's ruling be upheld. However, what is striking about Trim's facts is that Reward Zone's dialing system meets the literal test for ATDS, under both the plain language of the statute and the Supreme Court's test articulated in *Facebook*. To qualify as an ATDS "a device must have the capacity ***either*** to store a telephone number using a random or sequential generator ***or*** to produce a telephone number using a random or sequential number generator.") *Facebook* , 141 S. Ct. at 1163(emphasis added). Trim included source code in her complaint containing a sequential number generator used to store and produce telephone numbers to be dialed by the SMS blaster, and explained how those programs function, and result in *en masse* autodialing, as differentiated from the systems *Facebook* excludes. Trim's allegations are thus entirely consistent with the Supreme Court test, while *Borden*, if applied to Trim's allegations, would not be. Judge Van Dyke pointed this out in his concurring opinion in *Brickman*, which incidentally largely mirrors the arguments raised by Trim. To reconcile this intra-Circuit conflict, and ensure this Circuit's test for ATDS is consistent with *Facebook*, *en banc* review is necessary.

## REASONS FOR *EN BANC* REVIEW

## I. THE DEFINITION OF ATDS IS AN IMPORTANT DEVELOPING QUIESTION OF LAW.

"Americans passionately disagree about many things. But they are largely

united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone." *Barr v. American Association of Political Consultants, Inc*., 140 S.Ct. 2335 (2020). The TCPA is such an important, and oft-litigated statute, that the Supreme Court for the first time ever in *Barr*, severed an unconstitutional provision of a statute that otherwise would have been struck down on First Amendment grounds. The Supreme Court followed this up by issuing an opinion the following year on the definition of ATDS under the TCPA. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). Since *Facebook*, there have been three Circuit-level opinions further defining ATDS. More will come.[7] Eventually, unless these opinions are reconciled in some fashion, the Supreme Court will be asked to weigh in yet again. This is inevitable, because Americans continue to be bombarded by robodialers, and litigation will continue until the issues in this case are put to rest.

How an ATDS is defined is a question that has seen a great deal of interpretation and litigation in the thirty years of the statute. There are four FCC Orders defining the statute.[8] This Court has issued four decisions on the question

---

[7] Undersigned counsel is litigating one such case before the Second Circuit. *Soliman v Subway Franchise Advertising Fund Trust, Ltd*. Case No. 22-1726.
[8] See 7 FCC Rcd. 8752 (F.C.C. September 17, 1992); 18 FCC Rcd. 14014 (2003); 23 F.C.C. Rcd. 559 (Jan. 4, 2008); 30 F.C.C. Rcd. 7961 (2015).

in the past four years.[9]  Other circuits have weighed in.[10]  The D.C. Circuit addressed the issue and the FCC's Rules.[11]  *Facebook* struck down this Court's definition in *Marks* but left open the questions raised by Trim in her appeal.

As the D.C. Circuit stated, referring to whether an ATDS must self-generate phone numbers, "[t]he choice between the interpretations is not without practical significance." *ACA International v. Federal Communications Commission*, 885 F.3d 687, 703 (D.C. Cir. 2018).  With so much litigation, involving fortune 500 companies, the FCC, and affecting every American's privacy rights, this is clearly a question of great legal significance. This Court has a responsibility to clarify the emerging intra-district split between its panels over the *Borden* decision, which remains open to similar criticism by other circuits and the Supreme Court for the same reasons articulated by Judge Van Dyke in *Brickman*, and more.  Because this case presents an important issue of law, e*n banc review* should be granted.

## II.   *BORDEN* CONTRADICTS SUPREME COURT PRECEDENT

*Facebook* can be summarized as doing three things.  First, the Court struck down this Courts decision in *Marks*, which required only that an ATDS have the capacity to store telephone numbers and automatically dial those numbers (eliminating the requirement of random or sequential number generators).  Second,

---

[9] See *Facebook*, *Marks*, *Borden* and *Brickman*.
[10] *Panzarella v. Navient Solutions, Inc*., 37 F.4th 867 (3rd Cir. 2022)
[11] *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018).

the Court specified that any ATDS <u>must</u> have the capacity to either store **or** produce telephone numbers to be called, using a random or sequential number generator. Third, the Court gave meaning to the concept of how a system might store telephone numbers using a number generator in its oft-cited footnote seven.[12]

Post-*Facebook*, courts have struggled with this test because parties presenting the issues to reviewing courts have not introduced dialer software code into the record. If they did, it would show objectively whether a random or sequential number generator was being used to store or produce telephone numbers to be dialed. That code could then be explained by experts in software engineering to translate it into understandable terms. Trim has done this. Trim can point to the number generator, and explain what it does. However, reviewing courts bound by *Borden* will not be able to consider these facts, and must consider a completely different test – whether the system self-generates telephone numbers. Trim's Opening Brief explains why this interpretation is in conflict with *Facebook*.

The District Court, much like the panel in *Borden*, found that "equipment is only an autodialer if it uses a number generator to generate the phone numbers themselves – not if the number generator is used merely to index the phone

---

[12] This footnote is not dicta. It provides a factual illustration upon which the Supreme Court disagreed with *Marks*, which struggled with the concept of storing telephone numbers using number generators. *Facebook* explains how that concept is not inconsistent with how an ATDS operates.

numbers or select phone numbers from that index." The TCPA defines an ATDS as "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). For the District Court's Order to be consistent with the statute, an ATDS would need instead to be defined as "equipment that has the capacity—(A) to create telephone numbers to be called, using a random or sequential <u>telephone</u> number generator; and (B) to dial such numbers." This is not what the statute or the Supreme Court's interpretation of it say.

*Borden's* self-generation requirement ignores the storage aspect of *Facebook*, as well as systems expressly described in its ruling which rely on number generators to index and automatically dial stored lists of phone numbers produced from storage to the dialer (like the system Trim alleged). This ruling conflicts with *Facebook*, excising half of the Supreme Court's disjunctive test ("store <u>or</u> produce") from the plain language of the statute. The canon against superfluity strongly undermines the District Court's holding, which categorically excluded "storage" as a component of the disjunctive test outlined by the statute, and reinforced by the Supreme Court. The statute says "to store or produce" not "to generate." It is also impossible for a plaintiff to allege in good faith that an autodialer operates in such fashion, creating an impossible test that consumers could never satisfy.

*Borden* also conflicts with Supreme Court authority requiring reviewing courts to apply technical meanings to technical terms. *Van Buren v. United States*, 141 S.Ct. 1648, 1657 (2021). Random or sequential number generators are well-understood computer science tools and should be given a definition consistent with their technical application, because an ATDS is simply a piece of software.

*Borden* further conflicts with Supreme Court authority on the rule against superfluity. *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004).[13] There is no TCPA without the affirmative defense of prior express consent; however consent cannot coexist with autodialers that cannot dial stored lists of numbers which have consented to receive such calls. It would be impossible to create an ATDS that randomly or sequentially generates telephone numbers to be dialed, but somehow manages to only dial telephone numbers for which it has consent to do so.

## III. *BORDEN* AND *BRICKMAN* PRESENT AN INTRA-CIRCUIT CONFLICT THAT MUST BE RESOLVED.

Most notable in this discourse is the current split emerging within the Ninth Circuit, which recently issued two conflicting ATDS orders: *Borden and* Brickman. *Borden* supports Reward Zone's position and would uphold the District

---

[13] Reading a statute in a manner which renders core portions of the statute mere surplusage should be avoided. *See Duncan v. Walker*, 533 U.S. 167, 174, (2001) ("We are especially unwilling" to treat a statutory term as surplusage "when the term occupies so pivotal a place in the statutory scheme"). The canon assists "where a competing interpretation gives effect to every clause and word of a statute." *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2240 (2011).

Court's Order.   However, interestingly, just a few weeks later, the *Brickman* court followed *Borden* on "law of the circuit" principles, while including a strong concurring opinion from Judge Van Dyke, refuting the *Borden* reasoning.   Judge Van Dyke's opinion supports Trim's reading of the statute and suggests disagreement within the Ninth Circuit about the validity of *Borden*.   This conflict should be reconciled within the Ninth Circuit before the Supreme Court is asked to again look at the definition of ATDS.

Judge Van Dyke took issue with *Borden* for several reasons, all ultimately amounting to justification for why number generator does not mean the same thing as telephone number generator.   *Brickman v. United States*, 56 F.4th 688, 691-93 (9th Cir. 2022).   First, *Borden's* analysis overlooks the phrase random or sequential number generator clearly being a tool of computer programming, which should be given its technical meaning, not a colloquial definition.   Second, Judge Van Dyke reasoned that a phone number is comprised of numbers much like a wooden chair is made of wood, but that it does not follow that the definition of number should be restricted to telephone numbers any more than the term "wooden" would (in the context of a wooden chair) preclude application of the term "wood" to a wood lathe.   It is more plausible to attribute the technical application of "random number generator" under its established definition than to insert limiting descriptive terms not part of the definition crafted by Congress and conflating the term with "random

telephone number generator." Additionally, interpretation of the definition in such a manner would render Footnote 7 of the Facebook decision nonsensical, and courts are bound by Supreme Court authority on the subject. Therefore, "[t]he fundamental interpretive assumption underlying the Borden decision is just wrong." *Id*. at 692.

Judge Van Dyke goes on to observe that Borden nullifies the significance of the word "store" in the statute, rendering it mere surplusage, which violates canons of construction and "mangle[s] the text's meaning" and further conflicts with the Supreme Court's emphasis on storage as one of the disjunctive elements of the ATDS definition as justification for why it overturned *Marks v Crunch*. Id. Judge Van Dyke further goes on to address that there is no substance to the fear that giving meaning to the phrase "store" would turn every cell phone into an ATDS, because for a dialing system to be an ATDS, it must not simply store telephone numbers, but use random or sequential number generators to store those numbers, for the purpose of automatically calling them in that order using the same dialing system (as indicated by the statutory text "to be called"). Finally, Judge Van Dyke acknowledges the broader purpose of the TCPA, which is to prohibit automatic dialing that could create nuisance to commercial and residential consumers. Id. at *693, citing H. R. Rep. No. 102–317, p. 24 (1991); see also *Facebook*, 141 S. Ct. at 1167 ("Autodialers could reach cell phones, pagers, and unlisted numbers,

inconveniencing consumers and imposing unwanted fees.").

The concurring opinion in *Brickman* recites a correct reading of the law, and a compelling criticism of *Borden*. Holding that self-generation of telephone numbers is the standard would go beyond any reasonable reading of what Congress intended to prohibit, and what the Supreme Court held in *Facebook*. Judge Van Dyke's concurrence in *Brickman* got this right.

## CONCLUSION

The emerging split in Ninth Circuit authority which arose during the pendency of this Appeal presents an ideal procedural circumstance where *en banc* review is warranted. Moreover, Trim's particular case carries a fact pattern which would meaningfully inform an analysis regarding a reconciliation of *Borden* and *Brickman*. While *en banc* review is rarely granted, it should be granted here, because all factors are satisfied, and doing so would preserve resources for not only the parties, and the judiciary, but for litigation under the TCPA as a whole.

Dated: January 24, 2023                          Respectfully Submitted,


                                        BY: /s/ Todd M. Friedman
                                            TODD M. FRIEDMAN
                                            ADRIAN R. BACON
                                            THOMAS E. WHEELER


                                            ATTORNEYS FOR
                                            APPELLANT

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. 35(b)(2) and (3)

I certify pursuant to Fed. R. App. P. 35(b)(2) and (3) that the attached

Opening Brief for the Appellant Lucine Trim complies with the type-volume

limitation of Fed. R. App. P. 35(b)(2) and (3) as it is proportionately spaced, has a

typeface of 14 points, and contains 13,641 words and is under 15 pages in length.

Dated: January 24, 2023                                Respectfully Submitted,


                                            BY: /s/ Todd M. Friedman
                                                TODD M. FRIEDMAN

                                                ATTORNEYS FOR
                                                APPELLANT

# CERTIFICATE OF SERVICE

I, Todd M. Friedman, certify that on January 24th, 2023, the Appellant's Opening Brief was e-filed through the CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's EMC/ECF system. A copy of the e-filed documents were sent, via the EMC/ECF system:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JAY T. RAMSEY,
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055

KLEIN MOYNIHAN TURCO LLP
Neil E. Asnen (*pro hac vice*)
450 Seventh Avenue, 40th Floor
New York, New York 10123

**LAW OFFICES OF TODD M. FRIEDMAN**

BY:   /s/ Todd M. Friedman
Todd M. Friedman, Esq. (SBN 21675)
21031 Ventura Blvd., Ste. 340
Woodland Hills, CA 91364
Phone: (877) 206-4741
Fax: (866) 633-0228
Email: tfriedman@toddflaw.com